Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Scott McNutt, CSB
Marianne Dickson, CSB
MCNUTT LAW GROUP, LLP
188 The Embarcadero, Suite 800
San Francisco, CA 94105
(415) 995-8475 Telephone
(415) 995-8487 Facsimile
mdickson@ml-sf.com

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>MONTGOMERY REALTY GROUP, INC.<br><br>Debtor | Case No. 09-31879 DM<br><br>Chapter 11<br><br>DATE: May 28, 2010<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Dennis Montali |

## MOTION FOR APPROVAL OF COMPROMISE

**Berkadia Mortgage Company, LLC**

TO: THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

The Motion of Montgomery Realty Group, Inc., Debtor and Debtor in Possession, for an Order approving and authorizing it to implement a compromise of controversies with Bank of America, N.A. as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2000-WF1, acting through Berkadia Commercial Mortgage, LLC, a Delaware limited liability company ("Berkadia"), respectfully represents as follows:

1. On July 6, 2009, the Montgomery Realty Group, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating the above case. No trustee has been appointed, and the Debtor operates its business as Debtor in Possession pursuant to 11 U.S.C. § 1101, et seq.

### *Background*

2. The Debtor proposed a Plan of Reorganization (the "Prior Plan"). The holder of the first deed of trust encumbering 710 Sansome Street, then known as Capmark and now known as Berkadia, and John Yee, holder of the first deed of trust encumbering 447 Battery Street objected to confirmation of the Prior Plan.

3. The Court conducted a preliminary Confirmation Hearing on December 2, 2009, at which the Court determined that the unsecured creditor classes had accepted the Prior Plan, and conducted a Status Conference respecting discovery and trial setting with respect to the Objections to the Prior Plan.

4. In the course of discovery respecting the Objections to the Prior Plan, the Debtor and Berkadia negotiated a settlement, a true and correct copy of which was filed herein as Docket No. 118 (the "Berkadia Stipulation") The Debtor hereby seeks an Order of the Court pursuant to Rule 9019 approving the Berkadia Stipulation.

### *The Proposed Settlement*

5. The principal elements of the Berkadia Stipulation are:

    a. Interest is fixed at 6.67%, rather than the 5.25% proposed in the Prior Plan.

b. The initial term of the loan is 3 years, with a 2 year extension that can be exercised if the Debtor meets certain performance requirements, rather than the 7 years proposed in the Prior Plan.

c. Although principal repayment does not commence until the extension period, and then proceeds on the basis of a 25 year amortization rather than the 30 year amortization proposed in the Prior Plan, the Debtor will make additional flat monthly payments (initially $15,000 per month, reduced to $5,000 per month in March of 2011 and thereafter) on account of Past Due Amounts accrued in connection with the loan.

d. Berkadia shall have relief from stay and be permitted to exercise all of its rights in the event of any default under the Berkadia Stipulation.

e. Berkadia shall be deemed to accept any Plan of Reorganization consistent with the Berkadia Stipulation. The Debtor has filed an Amended Plan of Reorganization consisten with the Berkadia Stipulation.

### *Analysis of the Proposed Settlement*

The Legal Test:

6. The applicable test for approval of a compromise of a controversy is established by *In re A & C Properties*, 784 F.2d. 1377, 1381 (9th Cir.), *cert. den.* 479 U.S. 854 (1986).

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the Court must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

7. *Probability of Success:* This factor supports approval of the settlement. The Debtor's prospects for success in seeking to "cram-down" on Berkadia the treatment proposed by the Prior Plan are entirely unclear.

8. The principal issues are whether the Debtor will be required to replace the Keker Firm with a new tenant paying market rental rates in March of 2011 or November of 2012, how long the premises are likely to be vacant before a new tenant is obtained, what rental rate a new tenant will agree to pay and what tenant improvement allowance and broker's commission the Debtor will be required to pay in order to obtain a new tenant. Those disputed issues of fact are the subject of divergent expert witness opinions. The Court's determination of those disputed issues of fact may determine the feasibility of the Prior Plan, which in turn would determine whether it could be crammed down on Berkadia.

9. *Collection Risk:* This factor is irrelevant to the analysis of the Berkadia Stipulation.

10. *Complexity, Expense, Inconvenience and Delay Associated with Litigation:* This factor strongly supports the approval of the settlement.

11. The primary issue to be litigated with Berkadia – feasibility – carries with it numerous factual and legal issues. The secondary issues of interest rate and terms likewise implicate various factual and legal issues. All of these matters require expert testimony and extensive briefing. The complexity, expense and inconvenience of the anticipated litigation is material.

12. Admittedly, settlement with only one of the two primary Objectors provides only incremental benefits, and many of these "Berkadia issues" may nonetheless be litigated by Mr. Yee. Eliminating one of two Objectors, however, does materially simplify the litigation, and gives rise to the possibility that a second settlement will yield a consensual case.

13. *The Paramount Interests of Creditors:* This factor strongly favors the proposed settlement.

14. As is often the case in real estate bankruptcies, the alternatives from a creditor's perspective are "all or nothing". If a Plan of Reorganization is confirmed, creditors enjoy a reasonable prospect of substantial payment: in this case, unsecured creditors are offered payment in full.

15. That "all or nothing" dynamic is exacerbated in this case, where each property enjoys a comparatively low tax basis. Any foreclosure is likely to result in substantial capital gains, "swamping" the case with tax claims and eliminating any prospect of payment to creditors.

16. In that "all or nothing" context, the burdens of the settlement – a 1.25% increase in the interest rate, an aggressive repayment rate – are comparatively trivial in significance. This settlement is clearly consistent with the paramount interests of creditors.

*Prayer*

WHEREFORE, Montgomery Realty Group, Inc. prays that the Court make and enter its Order:

1. Determining that, under the circumstances, parties in interest have received adequate notice and an opportunity to be heard;

2. Approving and authorizing implementation of the Berkadia Stipulation proposed herein, and authorizing the Debtor to take all actions necessary and proper to consummate it;

3. Granting such other and further relief as may be just and proper.

DATED: May 10, 2010          Respectfully submitted,

                ST. JAMES LAW, P.C.
                McNUTT LAW GROUP, LLP

                By: /s/ *Michael St. James* .
                   Michael St. James
                Counsel for the Debtor