1  Michael St. James, CSB No. 95653
   ST. JAMES LAW, P.C.
2  155 Montgomery Street, Suite 1004
   San Francisco, California  94104
3  (415) 391-7566 Telephone
   (415) 391-7568 Facsimile
4  michael@stjames-law.com

5

   Scott McNutt, CSB
6  Marianne Dickson, CSB
   MCNUTT LAW GROUP, LLP
7  188 The Embarcadero, Suite 800
   San Francisco, CA  94105
8  (415) 995-8475  Telephone
   (415) 995-8487   Facsimile
9  mdickson@ml-sf.com

10 Counsel for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re | Case No.  09-31879 DM |
| MONTGOMERY REALTY GROUP, INC. | Chapter 11 |
| | DATE:   May 28, 2010<br>TIME:    9:30 a.m.<br>JUDGE:  Hon. Dennis Montali |
| Debtor | |

## MOTION FOR APPROVAL OF COMPROMISE

**Dinesh Maniar**

TO: THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

The Motion of Montgomery Realty Group, Inc., Debtor and Debtor in Possession, for an Order approving and authorizing it to grant a release to and receive a Loan Commitment from Dinesh Maniar ("Maniar"), respectfully represents as follows:

1. On July 6, 2009, the Montgomery Realty Group, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating the above case. No trustee has been appointed, and the Debtor operates its business as Debtor in Possession pursuant to 11 U.S.C. § 1101, et seq.

*Background*

2. The Debtor proposed a Plan of Reorganization (the "Plan"). The holder of the first deed of trust encumbering 710 Sansome Street, then known as Capmark and now known as Berkadia, and John Yee, holder of the first deed of trust encumbering 447 Battery Street objected to confirmation of the Plan.

3. The Court conducted a preliminary Confirmation Hearing on December 2, 2009, at which the Court determined that the unsecured creditor classes had accepted the Plan, and conducted a Status Conference respecting discovery and trial setting with respect to the Objections to the Plan.

4. In the course of discovery respecting the Objections to the Plan, Berkadia presented expert witness reports indicating that in order to achieve the lease-up of 710 Sansome Street, the Debtor might require as much as $300,000 in excess of its available cash resources. Mr. Yee presented expert witness reports indicating that in order to achieve the lease-up of 447 Battery Street and to fund negative cash flow respecting that property, the Debtor might require (through year-end 2011) as much as $600,000 in excess of its available cash resources. Collectively, the foregoing claims are referred to herein as the "Asserted Shortfall". Berkadia and Mr. Yee premised their primary challenge to the Plan on the Debtor's anticipated inability to fund the Asserted Shortfall.

5. The Debtor disputes the existence and amount of the Asserted Shortfall. The Debtor nonetheless acknowledges risks of litigation that the Court will determine that some portion of the

Asserted Shortfall is likely to occur, and as a result may deny confirmation of the Plan and permit foreclosure of the properties.

6. Maniar holds a substantial majority of the Debtor's equity. In addition, over the past several years Mr. Maniar advanced about $2.5 million to the Debtor, directly and through entities he controlled, to enable it to retain its various properties.

7. From time to time, and especially over the past 18 months, Mr. Maniar has caused the Debtor to repay portions of these obligations, primarily to his designees.

8. During the year prior to the bankruptcy filing, Mr. Maniar provided the Debtor with $300 more than he received, but as a result of the timing of the payments he may have received $42,000 in avoidable preferential transfers. Moreover, the Debtor understands the DMRE is a fictitious name used by Mr. Maniar, and it may have received $405,495 in avoidable preferential transfers. Thus, potential preference claims against Mr. Maniar aggregate approximately $450,000.

9. Mr. Maniar vigorously rejects the foregoing claims, and has advised that he will defend any action asserting them. To date, no such action has been commenced.

10. Mr. Maniar has offered to provide a loan commitment (the "Loan Commitment") sufficient to provide funding to cover the entirety of the Asserted Shortfall. He is not willing to do so, however, if he faces the prospect of being sued by the Debtor on preference theories. Mr. Maniar has therefore conditioned the provision of the Loan Commitment on the granting of a general release of all claims. The only potential claims of which the Debtor is aware are the preference claims identified above.

### *The Loan Commitment*

11. The principal elements of the Loan Commitment are:

    a. The Loan Commitment is secured by a junior deed of trust encumbering Mr. Maniar's house. The Debtor understands that Mr. Maniar's house has been listed for sale at $12.8 million. Encumbrances senior to the Loan Commitment approximate only $7.5 million, so

the Debtor believes that there is no real question about the funding of the Loan Commitment. Copies of the Loan Commitment and deed of trust are attached hereto.

    b.    The sole source of funding will be the proceeds of sale of Mr. Maniar's house. $1 million of the proceeds of sale of Mr. Maniar's house will be remitted directly to the Debtor and placed in a segregated interest-bearing account (the "Blocked Account").

    c.    Following approval of the instant motion and confirmation of the Amended Plan of Reorganization, the Debtor may disburse funds from the Blocked Account to fund lease-up expenses associated with 447 Battery or 710 Sansome.

    d.    The Debtor will pay interest monthly at the rate of 2% per annum for funds held in the Blocked Account and 6% per annum for funds disbursed from the Blocked Account. The Debtor will repay principal disbursed from the Blocked Account from time to time as it has available funds, but in any event by May of 2013. Repaying the Loan Commitment has priority over payments to the Debtor's unsecured creditors under the Amended Plan.

    e.    Provided that this Motion is approved and the Plan of Reorganization is confirmed, the Loan Commitment is designed to be completely enforceable. It is secured by a duly perfected deed of trust against Mr. Maniar's house and Mr. Maniar has consented to the issuance of an Order by the Bankruptcy Court compelling compliance with the Loan Commitment.

### *Analysis of the Proposed Settlement*

<u>The Legal Test</u>:

12.     The compromise in this case involves trading a release of the potential preference claims against Mr. Maniar for the benefits of the Loan Commitment. The applicable legal test for approval of a compromise of a controversy is established by *In re A & C Properties*, 784 F.2d. 1377, 1381 (9th Cir.), *cert. den.* 479 U.S. 854 (1986).

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the Court must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

13. *Probability of Success:* The Debtor's prospects of success in prosecuting preference claims against Mr. Maniar are unclear. Mr. Maniar would likely assert various defenses to a preference claim. For example, Mr. Maniar's scheduled compensation was $500,000 per year, and Mr. Maniar may contend that any net recovery he received was paid on account of that compensation. He also contends that although the payments were irregular, they were absolutely consistent with the ordinary course of business as between himself and the Debtor, which would constitute a defense under current law. Thus, it is more than possible that the Debtor would not prevail on the preference claim, or would prevail for a materially lesser amount.

14. *Collection Risk:* This factor supports the settlement. The Debtor is skeptical about the prospects of obtaining a material recovery on an unsecured claim against Mr. Maniar. Of the twelve properties Mr. Maniar owns or recently owned, ten are either in foreclosure or have been foreclosed. In addition to the Debtor and its wholly owned LLC, two other substantial entities owned by Mr. Maniar, Southland Thoroughbred Farms, Inc. and Diamond Oaks Vineyards, Inc., have filed bankruptcy cases to prevent foreclosures. An unsatisfied Texas judgment against Mr. Maniar for $32,392.97 has been attached to a Proof of Claim in this case. A review of public records in San Francisco reflects the existence of a number of recent collection actions filed against Mr. Maniar, including issuance of a judgment for more than $78,000. Absent the funding mechanism provided by the Loan Commitment – direct payment out of the proceeds of sale of a property currently being actively marketed, secured by a deed of trust with a substantial equity cushion – a significant risk of collection should be ascribed to an unsecured claim against Mr. Maniar.

15. *Complexity, Expense, Inconvenience and Delay Associated with Litigation:* This factor strongly supports the approval of the settlement. The financial affairs of the Debtor and the related entities are complex and involved. Obtaining information about those affairs through litigation and discovery would be burdensome and expensive. On the other hand, that information would likely be

used to establish defenses to any preference action, and thus would be essential to any successful prosecution of a preference claim.

16.  *The Paramount Interests of Creditors:* This factor strongly favors the proposed settlement.

17.  As is often the case in real estate bankruptcies, the alternatives from a creditor's perspective are "all or nothing". If a Plan of Reorganization is confirmed, creditors enjoy a reasonable prospect of substantial payment: in this case, unsecured creditors are offered payment in full. That "all or nothing" dynamic is exacerbated in this case, where each property enjoys a comparatively low tax basis. Any foreclosure is likely to result in substantial capital gains, "swamping" the case with tax claims and eliminating any prospect of payment to creditors.

18.  If the Debtor can avail itself of the Loan Commitment, its prospects of demonstrating feasibility and obtaining confirmation of its Plan of Reorganization are very substantially enhanced. Absent access to the Loan Commitment, there is a material danger that the Plan of Reorganization will not be confirmed, resulting in the foreclosure of the properties.

19.  By contrast, the preference claim that the Debtor is required to release is of very dubious net realizable value. The paramount interests of creditors are substantially advanced by obtaining the Loan Commitment instead of preserving the preference claim.

*Prayer*

WHEREFORE, Montgomery Realty Group, Inc. prays that the Court make and enter its Order:

1.  Determining that, under the circumstances, parties in interest have received adequate notice and an opportunity to be heard;

2.  Approving the broad release of Mr. Maniar and authorizing implementation of the Loan Commitment proposed herein, and authorizing the Debtor to take all actions necessary and proper to consummate it; and

1       3.    Granting such other and further relief as may be just and proper.

2  DATED:    May 10, 2010    Respectfully submitted,

3      ST. JAMES LAW, P.C.
4      McNUTT LAW GROUP, LLP

5      By:  /s/ *Michael St. James* .
          Michael St. James
6      Counsel for the Debtor